IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN T. HERALD, | ) | CASE NO.      3:18CV00496 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE JAMES G. CARR |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| SHELBIE SMITH, | ) | JONATHAN D. GREENBERG |
| Warden | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2.  Before the Court is the Petition of John T. Herald ("Herald" or "Petitioner"), for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254.  Herald is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence in *State v. Herald,* Defiance County Court of Common Pleas Case No.14 CR 11918.  For the following reasons, the undersigned recommends the Petition be DENIED.

### I.  Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct unless rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695

F.3d 439, 447 (6th Cir. 2012); *Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011).  The

state appellate court summarized the facts underlying Herald's conviction as follows:

> {¶ 2} On May 9, 2014, Herald was indicted for Burglary in violation of R.C. 2911.12(A)(1), a felony of the second degree, Domestic Violence in violation of R.C. 2919.25(A), a felony of the fourth degree due to Herald having a prior Domestic Violence conviction, and Aggravated Menacing in violation of R.C. 2903.21(A), a first degree misdemeanor. Herald originally pled not guilty to the charges.

> {¶ 3} On July 3, 2014, the State filed a motion for joinder requesting that the charges in this case be joined with a Retaliation charge in another case. That motion was granted.

> {¶ 4} On July 17, 2014, a hearing was held wherein Herald agreed to plead guilty to the Burglary and Domestic Violence charges in this case, and the Retaliation charge in the separately indicted case. In exchange the State agreed to dismiss the Aggravated Menacing charge in this case. The State also agreed to recommend that Herald be sentenced to four years of community control on the Burglary and Domestic Violence offenses with a reserved six-year prison term on the Burglary and an eighteen-month prison term on the Domestic Violence, which would be served consecutive to each other for an aggregate seven-and-a-half-year prison term in the event that community control was revoked. In addition, the State agreed to recommend that Herald be sentenced to one year in prison on the Retaliation charge in Herald's other case, with his community control on the charges in this case to begin once he was released from prison.

> {¶ 5} The trial court conducted a Crim.R. 11 colloquy with Herald wherein Herald indicated that he understood the rights he was waiving, the consequences of his plea, and the potential penalties he was facing. Herald seemed briefly confused by the court's indication that the court did not have to follow the parties' sentencing recommendation, but the court made it clear that it did not have to follow the recommendation and Herald elected to plead guilty pursuant to the oral plea agreement.

> {¶ 6} The court had the State recite a factual narrative related to the charges. In the narrative, the State indicated that Herald unlawfully entered the private residence of his ex-girlfriend, who was also the mother of his child, despite previously being told not to be there. The State indicated that Herald was intoxicated and that he shoved the victim down, and that he had a prior conviction for Domestic Violence.

{¶ 7} After narrating the factual basis for the charges, the court asked defense counsel whether the operative facts were correct and defense counsel stated that "[t]he facts are debatable, but I'm sure the prosecution can put together evidence that could convince a jury, a trier of fact." (July 17, 2014, Tr. at 15). The court then asked Herald whether the facts happened as alleged and he responded, "[t]o a degree." (*Id*.) However, Herald stated that he admitted to the essential elements of each of the offenses, and that it was his intention to plead guilty per the plea agreement.

{¶ 8} The court accepted Herald's pleas as knowingly, intelligently, and voluntarily entered and found Herald guilty.

{¶ 9} On August 28, 2014, Herald's sentencing hearing was held. At sentencing the trial court recited the plea arrangement, stating that the parties recommended that Herald would be placed on community control for the Burglary and Domestic Violence convictions upon being released from his one-year prison term for Retaliation in the separate case. The court indicated that the parties recommended that if Herald violated his community control he would be subject to an aggregate seven-and-a-half-year prison term.

{¶ 10} The court then asked the parties to be heard, and defense counsel indicated that the sentence recommendation was "the agreed disposition." (Aug. 28, 2014, Tr. at 3–4). Herald addressed the court stating that he understood what he did was wrong and that he was willing to take responsibility for it. He urged the court to adopt the parties' sentencing recommendation.

{¶ 11} The court stated that Herald had an extensive criminal history and told Herald that "it's highly unlikely that you're going to be able to succeed on community control." (Aug. 28, 2014, Tr. at 4). Herald stated that he believed that he could succeed on community control and that he understood the consequences if he did not comply with his terms of community control.

{¶ 12} The same date as Herald's sentencing hearing, a "Community Control Agreement and Order" was filed, indicating the terms and conditions of Herald's community control. Among the conditions were for Herald not to possess or use drugs, and that he have a midnight curfew. Specific conditions were also added that Herald should not be in any bars or taverns and that he should not possess or consume any alcohol. (Doc. No. 23).

{¶ 13} An entry memorializing Herald's sentence was filed September 16, 2014.

3

{¶ 14} The next relevant activity in this case occurred December 14, 2015, when the State filed a motion to revoke Herald's community control, contending that he had violated multiple terms of his community control. Specifically, the State indicated that Herald was not home by his curfew one night and that on or about December 4/5, 2015, Herald was at the Power Dam Bar and was consuming alcoholic beverages.

{¶ 15} On December 14, 2015, the trial court held a hearing on the motion to revoke Herald's community control. Herald waived his right to counsel and indicated that he was "obviously * * * guilty" and that he fully admitted to the violations. (Dec. 14, 2015, Tr. at 3). The State provided a narrative of the incident, indicating that not only was Herald at a bar, consuming alcohol, and out past his curfew, but that he also was involved in a fight at the bar.

{¶ 16} The court then accepted Herald's admissions to his community control violations and asked the State for its recommendation as to disposition. At that time the State recommended that the disposition be delayed to see if Herald could comply with the conditions of supervision, and that any "recommendation would be dependent upon that. We would likely be recommending that he not be revoked, possibly some additional specials if he commits no new violations. But it would depend upon what his situation was at that time." (Dec. 14, 2015, Tr. at 11).

{¶ 17} The court then again reiterated that Herald had a lengthy criminal history and that he made a mistake being in the bar that evening. Herald requested leniency, indicating that he had a job and his own residence and was doing better. Ultimately the court continued disposition for Herald's admitted violations for approximately two months. An entry reflecting what transpired at the hearing was filed December 18, 2015.

{¶ 18} The case was called for a dispositional hearing on February 10, 2016. At the hearing, the State indicated there were additional issues that had arisen since the last hearing, such as Herald testing positive for marijuana and a complaint being investigated that Herald committed sexual imposition against a female inmate. The State indicated it had not filed new allegations of community control violations yet based on the new issues. At that time, the State requested that the court revoke Herald's community control and impose the reserved prison term.

{¶ 19} Herald addressed the court, admitting to smoking the marijuana, but he denied the sexual imposition allegation, stating that he had told the prosecutor and a detective that he would take a polygraph test "any day of

4

the week. I will pay for it. I'll do it right now." (Feb. 10, 2016, Tr. at 6). The court agreed to continue the dispositional hearing to allow Herald to undertake the polygraph examination that he requested, indicating that the State should prepare a stipulation that the results of the test would be admissible and the court could consider it.

{¶ 20} The final dispositional hearing was held March 14, 2016.

At the hearing the court stated that Herald's polygraph test indicated that Herald was being deceptive. Herald denied that he failed the polygraph examination, and the court asked whether Herald saw on the front page of the report that it said Herald did not pass the polygraph examination. Herald responded that he saw it but it was not his understanding. However, the record does not contain any documentation related to the questions asked at the polygraph examination. Similarly, the record does not contain a copy of the results or any stipulation related to their admissibility.

{¶ 21} Despite the results of the polygraph examination that the court narrated, Herald still denied that the sexual imposition occurred and requested leniency from the court, asking that his community control be continued even though he had multiple other violations that he had readily admitted to. The State recommended that Herald's community control be revoked.

{¶ 22} The court recited Herald's lengthy criminal history, including the crimes Herald was currently on community control for. The court then revoked Herald's community control, and imposed the reserved prison terms, six years for the burglary and eighteen months for the Domestic Violence, to be served consecutive to each other, for an aggregate seven-and-a-half-year prison term. When Herald asked the court "why" the court would impose such a prison term, the court stated "[b]ecause you won't follow your rules of community control." (Mar. 14, 2016, Tr. at 13). The court added that Herald earned his prison terms by committing the offenses to which Herald pled guilty. At that time Herald attempted to contend that he never actually "burglarize[d] anything," despite already pleading guilty to the Burglary. (*Id.* at 13).

{¶ 23} A final judgment entry revoking Herald's community control and imposing the aggregate seven-and-a-half-year prison term was filed March 17, 2016. It is from this judgment that Herald appeals, asserting the following assignments of error for our review.

*State v. Herald*, 2016-Ohio-7733 at ¶¶2-23 (Ohio App. 3rd Dist. Nov. 14, 2016).

5

## II. Procedural History

**A.      Trial Court Proceedings**

On May 9, 2014, the Defiance County Grand Jury indicted Herald with one count of burglary in violation of Ohio Revised Code ("O.R.C.") §2911.12(A)(1) (Count One); one count of domestic violence in violation of O.R.C. §2919.25(A)(Count Two); and one count of aggravated menacing in violation of O.R.C. §2903.21(A) (Count Three).  (Doc. No. 8-1, Exh. 1.) On June 2, 2014, Herald entered pleas of not guilty to all charges.  (Doc. No. 8-1, Exh. 2.)

On July 3, 2014, the State filed a Motion for Joinder, requesting the state trial court join the two criminal cases currently pending against Herald because "they [were] based on the same act or transaction."  (Doc. No. 8-1, Exh. 3.)  The state trail court granted this Motion on July 7, 2014 and joined Defiance County Court of Common Pleas cases 14-CR-11918 and 14-CR-11934.  (Doc. No. 8-1, Exh. 4.)

On July 17, 2014, Herald withdrew his not guilty plea and entered a plea of guilty to Counts One and Two.  (Doc. No. 8-1, Exh. 5.)  This matter proceeded to sentencing and on August 28, 2014, the state trial court placed Herald on community control for a period of four years.  (Doc. No. 8-1, Exh. 6.)  Herald, with counsel, signed a "Community Control Agreement and Order," which set forth the terms and conditions of his community control.  (*Id*.)  Within this Agreement, Herald acknowledged that the violation of any of these conditions "may result in the revocation of [his] community control and any sentence provided by law may be imposed."  (*Id*.) In September 16, 2014 Order, the trial court determined that in the event Herald violated community control, it reserved six years to be served for Count One and 18 months for Count Two, to be served consecutively, for an aggregate sentence of seven years and six months.  (Doc.

No. 8-1, Exh. 7.)  Count Three of the indictment was dismissed.  (*Id.*)

**B.      Revocation of Community Control**

On December 14, 2015, the state filed a Motion to Revoke Community Control, asserting Herald had violated the terms of his community control agreement.  (Doc. No. 8-1, Exh. 8.)

That same date, the state trial court held a hearing on this Motion.  (Doc. No. 8-1, Exh. 10.)  Herald waived his right to counsel.  (Doc. No. 8-1, Exh. 9, 10.)  During this hearing, Herald admitted to violating certain terms of his community control supervision.  (Doc. No. 8-1, Exh. 10.)  The state trial court accepted this admission and made a finding Herald violated the terms and conditions of his community control.  (*Id.*)  The state trail court continued the matter for disposition.  (*Id.*)

On February 10, 2016, the state trail court conducted another hearing on this matter.  (Doc. No. 8-4 at Tr. 2.)  The prosecutor informed the trial court that while no new community control violations had been filed, there were potential new violations involving a failed drug test and a gross sexual imposition investigation.  (*Id.* at Tr. 3.)  Herald admitted to smoking marijuana but denied the sexual imposition allegations.  (*Id.* at Tr. 6.)  He offered to take a lie detector test regarding these allegations.  (*Id.*)  The Court agreed to allow Herald to take a lie detector test and again continued the matter for disposition.  (*Id.*)

On March 14, 2016, the state trail court held a third hearing on this matter.  (Doc. No. 8-1, Exh. 11.)  The state trail court, after taking statements and reviewing the record, revoked Herald's community control.  (*Id.*)  The state trail court then ordered Herald to serve the reserved sentence of six years for Count One and 18 months for Count Two.  (*Id.*)  These sentences were to be served consecutively, for an aggregate sentence of seven years and six months.  (*Id.*)

7

**C.      Direct Appeal of Community Control Revocation**

On April 18, 2016, Herald, through counsel, filed a timely notice of appeal to the state

appellate court.  (Doc. No. 8-1, Exh. 13.)  In his appellate brief, he raised the following

assignments of error:

> I.      The trial court committed prejudicial error by imposing consecutive
>         sentences without making appropriate findings pursuant to R.C.
>         §2929.14.
>
> II.     The trial court committed prejudicial error by failing to consider
>         applicable sentencing statutes.
>
> III.    The trial court's decision to revoke appellant's community control
>         constituted an abuse of discretion.
>
> IV.     The trial court committed plain error by allowing the prosecutor to
>         change the bargained for recommendation.
>
> V.      Appellant's Due Process rights were violated when the state failed
>         to comply with the Due Process requirements of community control
>         revocation proceedings.
>
> VI.     Appellant's Due Process rights were violated when the trial court
>         failed to make written findings of fact and conclusions of law.

(Doc. No. 8-1, Exh. 14.)  The State filed a brief in response.  (Doc. No. 8-1, Exh. 15.)

On November 14, 2016, the state appellate court affirmed the judgment of the trail court.

(Doc. No. 8-1, Exh. 16.)

On December 20, 2016, Herald, proceeding *pro se*, filed a Notice of Appeal with the

Supreme Court of Ohio.  (Doc. No. 8-1, Exh. 17.)  In his Memorandum in Support of

Jurisdiction, Herald raised the following Propositions of Law:

> I.      The trial court committed prejudicial error by imposing consecutive
>         sentences without making appropriate findings pursuant to R.C.
>         2929.14.

8

II       The trial court committed prejudicial error by failing to consider
         applicable sentencing statutes.

III.     The trial court's decision to revoke appellant's community control
         constituted an abuse of discretion.

IV.      The trial court erred by allowing the prosecutor to change the
         bargained for recommendation.

V.       Appellant's Due Process rights were violated when the state failed to
         comply with the Due Process requirements of community control
         revocation proceedings.

VI.      Appellant's Due Process rights were violated when the trial court
         failed to make written findings of fact and conclusions of law.

(Doc. No. 8-1, Exh. 18.)  The State did not file a response.

On May 17, 2017, the Supreme Court of Ohio declined to accept jurisdiction of the

appeal pursuant to S.Ct. Prac.R. 7.08(B)(4).  (Doc. No. 8-1, Exh. 19.)

**D.      Federal Habeas Petition**

On February 16, 2018,[1] Herald filed a Petition for Writ of Habeas Corpus in this Court

and asserted the following grounds for relief:

**GROUND ONE**: Herald's Due Process Rights were violated when the State
failed to comply with the Due Process Requirements of Community Control
Revocation Proceedings.

**Supporting Facts**: Herald was denied due process of law when
the trial court violated him on new violations that were never
filed, and for which he never received written notice to afford
him the right to present evidence to defend himself.

---

[1]  Under the mailbox rule, the filing date for a *pro se* petition is the date that a petitioner
delivers it to prison authorities.  *See Houston v. Lack*, 487 U.S. 266 (1988).  While the
Petition herein did not arrive at the Court for filing until March 5, 2018, Herald states
he placed it in the prison mailing system on February 16, 2018.  (Doc. No. 1 at 15.)  Thus,
the Court will consider the Petition as filed on February 16, 2018.

9

**GROUND TWO**: Herald's Due Process Rights were violated when the trial court failed to make written Findings of Fact and Conclusions of Law.

> **Supporting Facts**: Herald's due process rights were violated when the Court failed to make written Findings of Fact and Conclusions of Law as to why Herald's community control was revoked.

(Doc. No. 1.)

On July 12, 2018, Warden Shelbie Smith ("Respondent") filed her Return of Writ. (Doc. No. 8.) Herald filed a Traverse on August 13, 2018. (Doc. No. 10.)

### III. Review on the Merits

**A.** **Legal Standard**

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997). The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings (as opposed to the dicta) of the United States Supreme Court. *See Parker v. Matthews*, 567 U.S. 37, 132 S.Ct.

10

2148, 183 L.Ed.2d 32 (2012); *Renico v Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1865-1866 (2010); *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Shimel v. Warren,* 838 F.3d 685, 695 (6th Cir. 2016); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005).  Indeed, the Supreme Court has indicated that circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court."  *Parker*, 567 U.S. at 48-49; *Howes v. Walker*, 567 U.S. 901, 132 S.Ct. 2741, 183 L.Ed.2d 612 (2012).  *See also Lopez v. Smith*, ⸺ U.S. ⸺, 135 S.Ct. 1, 4, 190 L.Ed.2d 1 (2014) (per curiam) ("Circuit precedent cannot 'refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that this Court has not announced.' " (quoting *Marshall v. Rodgers*, 569 U.S. 58, 133 S.Ct. 1446, 1450, 185 L.Ed.2d 540 (2013))).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. at 413.  By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id. See also Shimel*, 838 F.3d at 695.  However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly."  *Williams v. Taylor,* 529 U.S. at 411.  Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law.  *Id.* at 410-12.  "This

standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (citing *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

In *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), the Supreme Court held that as long as "fairminded jurists could disagree on the correctness of the state court's decision," relief is precluded under the AEDPA. *Id.* at 786 (internal quotation marks omitted). The Court admonished that a reviewing court may not "treat[ ] the reasonableness question as a test of its confidence in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 785. The Court noted that Section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal." *Id.* (internal quotation marks omitted). Therefore, a petitioner "must show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786–87. This is a very high standard, which the Supreme Court readily acknowledged. *See id.* at 786 ("If this standard is difficult to meet, that is because it is meant to be.")

## 1. Ground One

In his first ground for relief, Herald contends his due process rights were violated during his community control revocation proceedings. (Doc. No. 10 at 2.) Specifically, Herald asserts the State did not comply with due process requirements when presenting the allegations of a failed drug test and a sexual imposition investigation. (*Id.*) He maintains because this conduct

12

was "never filed" as community control violations, he "never received written notice or was

afforded the right to present evidence and confront witnesses against him."  (*Id.*)

Respondent maintains Herald's ground for relief is noncognizable because "there is no

factual basis for a due process violation that a federal court could recognize."  (Doc. No. 8 at 14.)

Respondent argues Herald fails to demonstrate "there is a constitutional prohibition against a

state trial court's considering a petitioner's conduct at a dispositional hearing."  (*Id.*)

Respondent asserts "an allegation of an error in applying a state rule does not merit this Court's

attention absent a constitutional question."  (*Id.* at 18.)

The Due Process Clause of the Fourteenth Amendment to the United States Constitution

prohibits any state from depriving "any person of life, liberty, or property, without due process

of law."  U.S. Const. Amend. XIV §1.  "Probationers have an obvious interest in retaining their

conditional liberty" while on probation.  *Black v. Romano*, 471 U.S. 606, 611 (1985).

Accordingly, "[t]he Due Process Clause of the Fourteenth Amendment imposes procedural and

substantive limits on the revocation of the conditional liberty created by probation."  *Id*. at 610.

The Supreme Court has found a probationer facing revocation must receive, at a minimum:

> (a) written notice of the claimed violations of [probation]; (b) disclosure to
> the [probationer] of evidence against him; (c) opportunity to be heard in
> person and to present witnesses and documentary evidence; (d) the right to
> confront and cross-examine adverse witnesses (unless the hearing officer
> specifically finds good cause for not allowing confrontation); (e) a 'neutral
> and detached' hearing body such as a traditional parole board, members of
> which need not be judicial officers or lawyers; and (f) a written statement
> by the factfinders as to the evidence relied on and reasons for revoking
> [probation].

*Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973)(quoting *Morrissey v. Brewer*, 408 U.S. 471, 489,

92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)).  *See also Bowen v. Jones*, 463 Fed App'x 514, 518 (6th

13

Cir. Feb. 22, 2012). In Ohio, the prosecution bears the burden of establishing a probation

violation by substantial evidence. *See State v. Hylton*, 75 Ohio App.3d 778, 783 (Ohio App. 4th

Dist.1991); *State v. Mingua*, 42 Ohio App.2d 35, 40 (Ohio App. 2nd Dist.1974).

Here, Herald raised this claim on direct appeal to both the state appellate and state

supreme court. (Doc. No. 8-1, Exh. 14, 18.) The state appellate court considered and rejected it

as follows:

> {¶ 44} In Herald's fifth assignment of error, he argues that his due process
> rights were violated by the State failing to comply with the requirements of
> community control revocation proceedings. Specifically, he argues that no
> community control violations were filed against Herald for his marijuana
> use or his alleged sexual imposition of a female inmate and that these
> potential violations were used against him.
>
> {¶ 45} Notably, any reference to Herald's marijuana use and his potential
> sexual imposition of a female inmate were only made at Herald's
> dispositional hearing. The trial court never determined whether Herald
> violated his community control based on his marijuana use or the alleged
> sexual imposition. Rather, the trial court merely took these issues into
> account when determining Herald's disposition for the violations of
> community control to which Herald had already admitted. This Court has
> already determined that it is not reversible error for a trial court to consider
> such allegations during a dispositional phase of a community control
> revocation hearing. *See State v. Rose*, 3d Dist. Logan No. 8–02–14,
> 2002–Ohio–5136, ¶ 20; *State v. Patierno*, 3d Dist. Defiance No. 4–08–08,
> 2009–Ohio–410, ¶ 24; *State v. Hurley*, 3d Dist. Hardin Nos. 6–10–02,
> 6–10–03, 2010–Ohio–3668, ¶¶ 8–15. Thus Herald's argument is not
> well-taken and his fifth assignment of error is overruled.

*Herald*, 2016-Ohio-7733 at ¶¶44-45.

The Court finds the state appellate court's determination was neither contrary to nor an

unreasonable application of clearly established federal law. Herald was given notice of the

alleged violations of his community control agreement on December 14, 2015, i.e. violation of

his curfew, visiting a bar, and consumption of alcohol. (Doc. No. 8-1, Exh. 8.) The state trial

court provided Herald with a hearing, in which he had the opportunity to contest these violations. (Doc. No. 8-6 at Tr. 3.)  Instead, Herald declined the trial court's offer to seek counsel to contest these violations and instead chose to admit to committing them.  (*Id*.)  Specifically, Herald testified he was "out at the bar" and had "drank," two direct violations of his community control agreement.  (*Id*.)  The trial court cautioned Herald that by admitting to these violations, he was giving up his right to hearings in which the state would need to "prove at least by preponderance of the evidence" that Herald had violated the terms of the agreement.  (*Id*. at Tr. 4-5.)  Herald rebuked this warning, again asserting he "did it obviously."  (*Id*. at Tr. 5.)  The trial court accepted this admission and continued the matter for disposition.  (*Id*. at Tr. 10, 14.)

After two more hearings[2] on the matter, the trial court ultimately revoked Herald's community control and imposed the reserved[3] prison term of seven years and six months.  (Doc. No. 8-1, Exh. 11.)  When Herald questioned the trial court as to why his community control was being revoked, the trial court responded "Because you won't follow your rules of community

---

[2]     During the February 2016 hearing, the state informed the trial court no new violations had been filed, but indicated Herald had recently failed a drug test and was being investigated for sexual imposition.  (Doc. No. 8-4 at Tr. 3.)  The state trial court noted because Herald had "already admitted," there was "no point in filing a new violation."  (*Id*.)  Herald admitted he "smoked weed," but denied the sexual imposition and offered to take a lie detector test.  (*Id.* at Tr. 6.)  The trial court obliged and Herald took a lie detector test and failed.  (Doc. No. 8-4 at Tr. 6; Doc. No. 8-5 at Tr. 6.)

[3]     Herald cannot prevail on any claim that he lacked sufficient notice or "fair warning" that he faced a term of imprisonment if he violated his community control because he was made aware of this penalty when signing his community control agreement. (Doc. No. 8-1, Exh. 6.)  Indeed, within the signed agreement, Herald agreed he understood "that *any* violation of the conditions may result in the revocation of my community control" and a sentence of 7 years and six months.  (*Id*.)(emphasis added)

control." (Doc. No. 8-5 at Tr. 13.)

Herald maintains he was denied due process with respect to the allegations of a positive drug test and a sexual imposition investigation.[4]  However, a violation of his community control agreement had already been established by his own admission.  The state trail court was within its discretion to revoke the community control and impose the sentence which Herald had already been on notice of.  Herald has not identified any clearly established federal law that establishes a due process violation under analogous circumstances.  Instead, Herald cites to various Ohio case law regarding the State's burden to show he had violated the terms of his community control by substantial evidence.  (*See* Doc. No. 10 at 4.)  As an initial matter, the state trial court specifically explained to Herald at the December 2015 hearing he was waiving this requirement by admitting on the record he had violated the terms of his community control.

---

[4]     Herald asserts the reason his "community control was revoked was due to the failed polygraph test concerning the sexual imposition investigation that was not properly before the court." (Doc. No. 10 at 3.)  Herald appears to be arguing because no violation regarding the sexual imposition or marijuana use was filed, the due process requirements set forth in *Gagnon* were not complied with.  However, Herald's community control was not revoked because of the failed polygraph, but rather, it was revoked because Herald violated the terms of his community control agreement – violations which Herald had already admitted to.  While the state trial court may have considered the failed polygraph and the positive drug screen when deciding whether or not to enforce the community control agreement, the state appellate court noted such a consideration was permitted under Ohio law.  *Herald,* 2016-Ohio-7733 at ¶45.  Because Herald has not shown such a consideration violates clearly established federal law, this Court can find no reason to disturb the conclusion of the state appellate court.  Indeed, it is well established that, in habeas proceedings, it "is not the province of a federal habeas court to reexamine state-court determinations on state-law questions," rather a federal court must only determine "whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991).

16

(Doc. No. 8-6 at Tr. 4-5.)  Moreover, to the extent Herald is arguing the state did not meet this burden, the Court agrees with Respondent this argument is not cognizable on federal habeas review.  Indeed, "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 765, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990).  *See also Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984) ("A federal court may not issue the writ on the basis of a perceived error of state law.")

Thus, absent any clearly established Supreme Court precedent to the contrary, this Court cannot find Herald was denied due process when he admitted to violating his community control agreement and the state trial court accordingly revoked his community control.  This Court concludes the state appellate court's decision is not contrary to, or any unreasonable application of, clearly established federal law.

Accordingly, the Court recommends Ground One of Herald's Petition be DENIED.

## 2.      Ground Two

In his second ground for relief, Herald argues he was denied due process because the trial court "failed to make written findings of fact and conclusions of law" following the revocation of his community control.  (Doc. No. 10 at 5.)  He asserts the transcribed record of his hearing was inadequate because the trial court failed to "give a detailed explanation on why [his] community control was revoked."  (*Id.*)  Herald contends the trial court "improperly based its decision to revoke community control on the polygraph examination which . . . was never properly before the court."  (*Id.* at 7.)  He argues "any consideration of the polygraph examination was improper."  (*Id.*)

Respondent maintains Herald's argument is without merit, noting "Herald knew the

17

reasons for the revocation and had a hearing where he admitted his conduct violated the terms of his community control."  (Doc. No. 8 at 19.)  Respondent further asserts Herald has not established "there is a constitutional requirement in every case for written findings of fact and conclusions of law."  (*Id*. at 14.)

As noted *supra*, due process provides for certain requirements in the context of probation revocation proceedings.  A probationer facing revocation must receive (1) written notice of the claimed violations of probation; (2) disclosure of the evidence against him; (3) an opportunity to be heard in person and present witnesses and documentary evidence; (4) the right to confront and cross examine adverse witnesses; (5) a neutral and detached hearing body; and (6) a written statement by the factfinder as to the evidence relied on and the reasons for the revocation. *Gagnon*, 411 U.S. at 786.  The Sixth Circuit has interpreted the written statement requirement to include the transcript of the revocation proceedings, holding the transcript "constitutes the functional equivalent of a written statement and satisfies due process."  *United States v. Glowka*, 726 Fed. App'x 1013, 1019 (6th Cir. Mar. 12, 2018)(citing *United States v. Gilbert*, 990 F.2d 916, 917 (6th Cir. 1993)).  *See also United States v. Phillips*, 370 Fed. App'x 610, 618-619 (6th Cir. Mar. 22, 2010).

Herald raised this claim on direct appeal to the state appellate court and state supreme court.  (Doc. No. 8-1, Exh. 14, 18.)  The state appellate court rejected this claim as follows:

{¶ 46} In Herald's sixth assignment of error, he argues that the trial court erred by failing to make written findings of fact and conclusions of law in revoking Herald's community control.

{¶ 47} To support his argument, Herald cites *State v. Delaney*, 11 Ohio St.3d 231, 465 N.E.2d 72 (1984), wherein the Supreme Court of Ohio stated that it did "not condone the use of oral 'explanations' in lieu of written statements detailing the basis for a trial court's determination in revocation

18

proceedings[.]" *Delaney* at 235, 465 N.E.2d 72. However, the Court continued by stating that written findings of fact and conclusions of law were immaterial since the appellant was adequately informed of the reasons for which his "probation" was being revoked on the record. *Id.*

{¶ 48} The preceding segment makes clear that the legal authority actually relied upon by Herald does not even adequately support his position. The Supreme Court of Ohio indicated only that it was more favorable if a trial court produced written findings of fact and conclusions of law when finding a violation, but it was not necessary so long as a defendant is adequately informed of the reasons his probation—now community control—is being revoked.

{¶ 49} Here, written violations were filed, a hearing was held, and Herald admitted to the violations. A factual basis of the violations was even presented and Herald gave his version of events. Herald was clearly apprised of why he was being found in violation of his community control in this case and the trial court made that clear. Therefore, Herald's sixth assignment of error is not well-taken, and is overruled.

*Herald*, 2016-Ohio-7733 at ¶¶46-49.

The Court finds the state appellate court's determination was neither contrary to nor an unreasonable application of clearly established federal law. On March 17, 2016, the state trial court issued an judgment entry, revoking Herald's community control. (Doc. No. 8-1, Exh. 11.) Beyond noting it had "reviewed the record herein at length" it did not provide any further details as to why Herald's community control was being revoked. (*Id.*) However, as noted *supra*, in addition to the judgment entry, the transcript of a revocation proceeding "constitutes the functional equivalent of a written statement and satisfies due process." *Glowka*, 726 Fed. App'x at 1019. A review of the hearing transcripts make the rationale behind the trial court's decision clear. At the December 2015 hearing, the trial court explained to Herald the alleged violations of his community control agreement and Herald readily admitted to the violations. (Doc. No. 8-6 at Tr. 2, 3.) Following this admission, the state provided testimony regarding the factual basis of

19

the violations. (*Id*. at Tr. 9-10.) After listening to this testimony, Herald agreed the state's description of the violations was "absolutely what happened." (*Id*. at Tr. 10.) Thus, as noted by the state appellate court, Herald was well aware of why he was found to be in violation of his community control agreement. After considering additional evidence and testimony over the course of two more hearings, the state trail court ultimately revoked Herald's community control and imposed the "balance of his previously reserved term." (Doc. No. 8-5 at Tr. 12.) The state trial court explained Herald's community control was being revoked because Herald "won't follow [the] rules of community control." (*Id*. at Tr. 13.) The basis of the trial court decision is clear from the transcript.

Herald again asserts the trial court "improperly based its decision to revoke community control on the polygraph examination." (Doc. No. 10 at 7.) He argues "any consideration of the polygraph examination was improper." (*Id*.) As an initial matter, the state trial court did not state its decision was due to the failed polygraph test. Moreover, Herald cites no authority[5] which forbids a trial court to consider behavior outside of his community control violations when determining whether or not to revoke probation. Indeed, the state appellate court noted such a consideration was permitted under Ohio law. *Herald,* 2016-Ohio-7733 at ¶45. Because Herald has not shown such a consideration violates clearly established federal law, this Court can find no reason to disturb the conclusion of the state appellate court.

_____

[5]      In support of his argument, Herald cites to a Supreme Court of Ohio case which pertains to the admission of polygraph evidence at trial. (Doc. No. 10 at 8.) *See State v. Souel*, 53 Ohio St.2d 123 (1978). This authority is not persuasive for two reasons: (1) it is based upon Ohio, not federal law and (2) the admission of evidence at trials is considerably different than the consideration of evidence at revocation proceedings. *See Herald*, 2016-Ohio-7733 at ¶26 ("we note that community control-revocation and dispositional hearings are not subject to the rules of evidence.").

Thus, absent any clearly established Supreme Court precedent to the contrary, this Court cannot conclude Herald's due process rights were violated. The Court concludes the state appellate court's decision is not contrary to, or any unreasonable application of, clearly established federal law.

Accordingly, the Court recommends Ground Two of Herald's Petition be DENIED.

## V. Conclusion

For all the reasons set forth above, it is recommended that the Petition be DENIED.

Date:   June 21, 2019                                    _s/ Jonathan Greenberg_
                                                        Jonathan D. Greenberg
                                                        United States Magistrate Judge

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See _United States v. Walters_, 638 F.2d 947 (6th Cir. 1981); _Thomas v. Arn_, 474 U.S. 140 (1985), _reh'g denied_, 474 U.S. 1111 (1986).**